UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KENDY J. BOLAH,

                      Plaintiff,

v.

LOCAL 804 UNION and UNITED PARCEL
SERVICE, INC.,

                      Defendants.

**MEMORANDUM & ORDER**
18-CV-2964 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Kendy J. Bolah, proceeding *pro se*, commenced the above-captioned action on May 6, 2018, against the International Brotherhood of Teamsters ("IBT"), Eddie Villalta, Danny Montalvo, Raul Molestina, United Parcel Service ("UPS"), Tommy Francis, and Lewis,[1] alleging unlawful discharge and unfair labor practices.[2] (Compl., Docket Entry No. 1.) On October 19, 2018, Plaintiff filed a Third Amended Complaint solely against Local 804 Union ("Local 804") and UPS, pursuant to section 8 of the National Labor Relations Act, 29 U.S.C. § 151 *et. seq.*, ("NLRA"), section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and the applicable collective bargaining agreement, alleging unlawful discharge and unfair labor practices. (Third Am. Compl. ("TAC"), Docket Entry No. 42.) On December 10 and 11, 2018, UPS and Local 804 filed separate motions to dismiss the TAC for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

    [1] Plaintiff did not provide Lewis' first name.

    [2] Plaintiff amended his Complaint on May 31, 2018 and June 22, 2018. (Am. Compl., Docket Entry No. 4; Second Am. Compl. ("SAC"), Docket Entry No. 19.)

Procedure, both of which were opposed by Plaintiff.[3]  By Order dated May 17, 2019, the Court gave the parties notice of its intention to convert Defendants' motions to dismiss to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and granted Plaintiff an opportunity to submit additional evidence for the Court's consideration.  (Order dated May 17, 2019.)  On July 12, 2019, Plaintiff filed a motion seeking leave to file a Fourth Amended Complaint, (Pl. Mot. to Amend, Docket Entry No. 57), and on July 16, 2019, filed a motion seeking leave to file a Fifth Amended Complaint, (Pl. Mot. for Leave to File Fifth Am. Compl., Docket Entry No. 58).  For the reasons set forth below, the Court grants Defendants' motions for summary judgment and denies Plaintiff's motions for leave to amend the TAC.

## I. Background

Plaintiff was an employee of UPS and a member of Local 804, a chapter of IBT.  (TAC 3.)  Defendants are Plaintiff's former employer and union.  (*Id.*)

### a. Plaintiff's employment and discharge

On September 5, 2017, UPS hired Plaintiff as a full-time driver assigned to the "Lexington Avenue Facility."  (*Id.*)  UPS terminated Plaintiff for tardiness less than a year later, on February 21, 2018.  (*Id.*)

Plaintiff alleges that his discharge was "without just cause" in violation of Article 12, sections 1 and 2 of the CBA[4] and the LMRA, and further alleges that he did not receive a notice

---

[3] (UPS Mot. to Dismiss ("UPS Mot."), Docket Entry No. 49; UPS Mem. of Law in Supp. of UPS Mot. ("UPS Mem."), Docket Entry No. 49-1; Local 804 Mot. to Dismiss ("Local 804 Mot."), Docket Entry No. 50; Local 804 Mem. of Law in Supp. of Local 804 Mot. ("Local 804 Mem."), Docket Entry No. 50-1; Pl. Opp'n to Local 804 Mot. and UPS Mot. ("Pl. Opp'n"), Docket Entry No. 48.)

[4] During all relevant times, UPS and IBT were parties to a National Master Agreement ("NMA") for the period of August 1, 2013 to July 31, 2018, to which Local 804 was also bound.

of discharge. (*Id.*) On the day of his termination, Plaintiff submitted a verbal grievance to Raul Molestina, a Local 804 representative, and requested copies of any documents that would be used by Local 804 or UPS in the grievance process. (*Id.* at 4.) Plaintiff alleges that Local 804 breached its "duty to fairly represent him" by both "failing to invoke Article 7[] of the CBA," and "failing to process" his grievance, in violation of the NMA and Supplemental Agreement. (*Id.* at 3–4.)

### b. Relevant provisions of the NMA and Supplemental Agreement

The parties dispute whether Plaintiff worked the requisite number of days to attain senior status and thus be eligible to have Local 804 handle his grievance as to his termination. (Local 804 Mem. 4–5; Pl. Opp'n 1–2.)

Article 1 of the Supplemental Agreement states that "[a]ll new employees shall be probationary or temporary employees until they have acquired seniority status to which time they may be summarily dismissed by the Company without challenge, but the Union may represent such temporary or probationary employees in the handling of grievances other than those relating to dismissal." (Suppl. Agreement 185.) The Supplemental Agreement includes the following provision as to probationary employees:

> All present employees who are members of the Union shall, as a condition of continued employment, maintain their membership in the Union during the life of this Agreement and all new employees shall, as a condition of continued employment, join the Union upon acquiring seniority status provided in Article 13 of this Agreement (but in no event earlier than 40 days from the date of their employment, or 40 days from the effective date of this Agreement,

---

(Decl. of Serge Ambroise ("Ambroise Decl.") ¶ 4, Docket Entry No. 50-2; NMA, annexed to Ambroise Decl. as Ex. 1, Docket Entry No. 50-3.) UPS and Local 804 were also parties to a local supplemental agreement to the NMA for the period from August 1, 2013 to July 31, 2018 ("Supplemental Agreement"). (Suppl. Agreement, annexed to Ambroise Decl. as Ex. 2, Docket Entry No. 50-4.) Plaintiff's employment was covered by the NMA and the Supplemental Agreement. (UPS Mem. 1–2.)

3

or the date this Agreement is executed, whichever is the later), and shall maintain their membership in the Union during the life of this Agreement.

(*Id*. at 185–86.) Article 13 of the Supplemental Agreement contains the following seniority provisions:

> (a) After forty days of work within a seventy consecutive work day period, (excluding orientation) a new employee will acquire seniority and the employee shall be given a seniority date as of his/her first day of employment (orientation) worked within such 70 consecutive work day period. If, however, the employee does not complete the 40 days within these 70 days his/her seniority date will be the first day of the 40 worked within any subsequent seventy (70) workday period.
>
> Time spent in the Company orientation program will not count toward the acquisition of seniority. This exemption shall be for a maximum of ten (10) days for Package and Air Drivers and five (5) days for all other positions.
>
> . . . .
>
> Any holidays listed in Article 9, Section 1[5] of this Agreement, falling within that seventy (70) consecutive work day period shall also count toward the acquisition of seniority.
>
> (b) There shall be a free period, beginning October 15 and ending January 15 the following year, during which no employee can qualify for seniority.
>
> (c) An employee who has been hired prior to October 15 and retained after January 15 or recalled within seventy (70) days after January 15 will retain credit for the number of days worked prior to October 15th. Those days retained will count towards the forty (40) days worked in a seventy (70) consecutive work day period commencing with the first (1st) day worked after January 15. These employees shall be given a seniority date as of his/her first day of

---

[5] Article 9 of the Supplemental Agreement states that "[a] full-time seniority employee shall be paid for the following holidays, provided the employee works a minimum of two (2) days during the holiday week: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Day after Thanksgiving, Christmas Day, [and] New Year's Eve Day." (Suppl. Agreement 214.)

4

employment (orientation) worked prior to the free period.

(*Id*. at 225.)  Plaintiff alleges that he "met his 40-day requirement at the time of his discharge" because he should have been credited with "[thirty-four] days of work towards seniority" and "should have also been credited with an additional [nine] holiday days." (Pl. Opp'n 2.)  Plaintiff also contends that he "was paying his union dues" at the time of his discharge.  (*Id*.)

On May 11, 2018, Plaintiff filed a complaint with the National Labor Relations Board against UPS for wrongful discharge and Local 804 for failure to provide the requested documents.  (*Id.* at 4.)  Plaintiff commenced this action five days later, on May 16, 2018.  (*Id.*)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

5

### b. The Court converts Defendants' Rule 12(b)(6) motion to a Rule 56 motion

Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, Defendants rely on documents outside of the pleadings to argue that Plaintiff did not attain seniority status at the time he was discharged. By Order dated May 17, 2019, the Court gave the parties notice of its intent to convert Defendants' motion to dismiss to a summary judgment motion and allowed Plaintiff to submit additional documents for the Court's consideration.[6] (Order dated May 17, 2019.)

In converting a motion to dismiss, "[t]he essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting *In re G&A Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied*, 475 U.S. 1015 (1986)); *see also Parado v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) ("[A] district court acts properly in converting a motion . . . into a motion for summary judgment when the motion presents matters outside the pleadings" and the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." (internal quotation marks omitted) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009))); *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012) (quoting same); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (noting that the party opposing the motion must be given "sufficient notice" and an opportunity to respond).

---

[6] The Court and Defendants provided Plaintiff with a copy of Local Civil Rule 12.1, which provides notice to a *pro se* litigant who opposes a Rule 12 motion supported by matters outside the pleadings, and a copy of the full text of Rule 56 of the Federal Rules of Civil Procedure. (Order dated May 17, 2019; Notice to Pro Se Litigant, annexed to UPS Mot., Docket Entry No. 49; Notice to Pro Se Litigant, annexed to Local 804 Motion, Docket Entry No. 50-6.)

A party cannot complain of a lack of reasonable opportunity to present all material relevant to a motion for summary judgment "when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *Sahu*, 548 F.3d at 67; *see also Hernandez*, 582 F.3d at 307 (noting that formal notice is not required where a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings" (alterations in original) (quoting *Villante v. Dep't of Corr.*, 786 F.2d 516, 521 (2d Cir. 1986))).

The parties rely on declarations and UPS' business records to demonstrate the days credited towards Plaintiff's seniority status. (*See generally* Local 804 Mem.; UPS Mem.) In his opposition, Plaintiff also refers to Defendants' evidence outside of the pleadings. (*See generally* Pl. Opp'n.) Accordingly, the Court converts Defendants' motion to dismiss to a motion for summary judgment under Rule 56.

    **c.** **Plaintiff fails to state a breach of duty of fair representation and a hybrid section 301/breach of duty of fair representation claim**

Defendants argue that Plaintiff's termination was not in violation of the applicable CBA because he was a probationary employee and could therefore be terminated without just cause and without notice. (UPS Mem. 8; Local 804 Mem. 9.)

Local 804 also argues that, notwithstanding the "number of days actually worked by and credited to . . . Plaintiff, it was the Union's understanding that when UPS discharged him, Plaintiff had not been credited with enough work days" and there was nothing arbitrary about Local 804's reliance on UPS' employment data in reaching that understanding. (Local 804 Mem. 13.)

Plaintiff argues that he did attain "seniority" status, that Local 804 should have processed

7

his termination grievance, and that Local 804's failure to do so was arbitrary and a breach of the duty of fair representation.[7] (Pl. Opp'n 2.)

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration

---

[7] A *pro se* plaintiff's submission "must be construed liberally to raise the strongest arguments it suggests." *Ford v. Palmer*, 539 F. App'x 5, 6 (2d Cir. 2013) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)); *see also Ross v. Westchester Cty.*, No. 10-CV-3937, 2013 WL 5178354, at *4 (S.D.N.Y. Sept. 16, 2013) ("In considering the summary judgment motion, the Court liberally construes all submissions by the *pro se* plaintiff . . . ."). However, a *pro se* plaintiff must still satisfy the usual requirements of summary judgment. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (noting that the liberal construction of *pro se* submissions "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." (citation and internal quotation marks omitted)). Nevertheless, when facing a summary judgment motion against a party proceeding *pro se*, the court may conduct "an assiduous review of the record" to determine whether any triable issues of fact exist. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

omitted) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)); *see also Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 23 (2d Cir. 2018) (same); *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (same). A union acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993); *see also Greene*, 727 F. App'x at 23 ("A union may breach its duty when it delays in processing a meritorious grievance result[ing] in prejudice to the plaintiff, such as foreclosing arbitration."); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. Jan. 23, 2015) ("In the context of claims that a union failed to file a grievance on a member's behalf, a union 'may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.'" (quoting *Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 412 (E.D.N.Y. 2014))). Arbitrary conduct includes "acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee

and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (internal citations and quotation marks omitted); *see also Clarke v. Commc'ns Workers of Am.*, 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases). While a union member does not have the absolute right to have his grievance arbitrated, the union cannot act arbitrarily in deciding whether a grievance warrants arbitration. *See Vaca*, 386 U.S. at 177, 191.

A "suit, which alleges that the employer breached the [collective bargaining agreement] and that the union breached its duty of fair representation, is known as a hybrid [section] 301/fair representation claim." *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017) (quoting *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)). Although "[a] plaintiff may sue the union or the employer, or both, [he] must allege violations on the part of both." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001). A plaintiff must therefore "prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *Nelson v. Local 1181-1061, Amalgamated Transit Union, AFL-CIO*, 652 F. App'x 47, 49 (2d Cir. 2016) (quoting *White*, 237 F.3d at 178).

The evidence before the Court demonstrates that, at the time of his termination, Plaintiff had not worked the requisite number of days required by the Supplemental Agreement to become a union member. In support of UPS' motion, Thomas Cleary, Labor Relations Manager in the North Atlantic District at UPS, which includes the New York area, submitted a declaration stating that "[a]s of the date of his termination at UPS, Plaintiff had not worked the requisite '40 in 70' as a driver, and, therefore, did not attain seniority." (Decl. of Thomas Cleary in Supp. of UPS Mot. ("Cleary Decl."), annexed to UPS Mot., Docket Entry No. 49-4.) In support, Cleary

relied on UPS' summary of Plaintiff's work history (Plaintiff's Work History, annexed to Cleary Decl. as Ex. 3, Docket Entry No. 50-5), and UPS' payroll records, which are kept in the normal course of business, showing the days for which Plaintiff worked and thus received credit toward attaining seniority, (UPS Payroll Records, annexed to Cleary Decl. as Ex. B, Docket Entry No. 50-5).

### i. Plaintiff's claim against Local 804

According to Plaintiff's Work History and the UPS Work Schedule, Plaintiff worked thirty-four non-holiday work days[8] and worked during only one of the five contractual holidays falling within the "free period."[9] (UPS Work Schedule.) Plaintiff argues, without any evidence in support, that he should be credited with an additional nine days for holidays that occurred during the relevant period, as provided for in Article 9 of the Supplemental Agreement, bringing his total number of work days to forty-three, and thereby satisfying the seniority requirement. (Pl. Opp'n 2.) However, Plaintiff has not presented any evidence that he worked "additional days" other than the thirty-four days identified by UPS' records in order to support his claim that he should be credited with forty-three days towards seniority. Plaintiff has therefore failed to rebut the evidence in the record showing that he worked less than forty days during the relevant period and therefore failed to attain seniority status.[10] *See Wright v. Goord*, 554 F.3d 255, 266

---

[8] Plaintiff does not dispute that he should only be credited with thirty-four work days towards seniority. (Pl. Opp'n 2.)

[9] As discussed above, the Supplemental Agreement provides that "[t]here shall be a free period, beginning October 15 and ending January 15 the following year, during which no employee can qualify for seniority." (Suppl. Agreement 225.)

[10] To the extent Plaintiff argues that Article 9 of the Supplemental Agreement required UPS to have credited him with all holidays which fell within the relevant period, Plaintiff's interpretation of the Supplemental Agreement is insufficient to raise a triable issue of fact as to

11

(2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) ("[P]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment.").

Based on the evidence before the Court, at the time of his discharge, Plaintiff had worked for less than forty days and was therefore a probationary employee, and, by the plain terms of the Supplemental Agreement, Local 804 did not have an obligation to process his termination grievance.[11] (*See* Suppl. Agreement 185.) Accordingly, Plaintiff has no viable claim against Local 804 and the Court therefore grants Local 804's motion for summary judgment.[12] *See*

---

whether Local 804 breached its duty of fair representation. Even assuming Local 804 erred in its interpretation of the Supplemental Agreement, Plaintiff does not provide any allegations to suggest that Local 804's interpretation of the Supplemental Agreement was unreasonable as a matter of law. *See Musto v. Transport Workers Union of America, AFL-CIO*, 818 F. Supp. 2d 621, 635 (E.D.N.Y. 2011) ("In the context of interpreting provisions of a CBA, a court may find that a union's interpretation of the provision was reasonable as a matter of law, even if the court disagrees with the interpretation reached by the union, so long as the unions actions were not 'so far outside a wide range of reasonableness' as to constitute irrational or arbitrary conduct." (quoting *Chaparro–Febus v. Int'l Longshoremen Assoc.*, Local 1575, 983 F.2d 325, 330 (1st Cir. 1992))).

[11] The Supplemental Agreement provides that the "Union may represent such temporary or probationary employees in the handling of grievances other than those relating to dismissal." (Supplemental Agreement 185.)

[12] Even assuming Local 804 erred in calculating the number of days that should have been credited towards Plaintiff's seniority status, such error is, at most, negligent conduct and does not give rise to a claim for breach of the duty of fair representation — Plaintiff does not allege that Local 804 acted with any improper intent, dishonesty, or other unlawful motive. *See Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (finding that "mere negligence"

*Trigg v. N.Y.C. Transit Auth.*, 50 F. App'x 458, 460 (2d Cir. 2002) (finding that the plaintiff did not have a breach of duty of fair representation claim against his union because "the union has established that its decision not to grieve [the plaintiff's] complaints or his termination was based on its established practice of not filing grievances on behalf of probationary employee," which practice was, as a matter of law, not 'arbitrary, discriminatory, or in bad faith.' (quoting *Wilder v. GL Bus Lines*, 258 F.3d 126, 129 (2d Cir. 2001))); *Grande v. Bimbo Bakeries USA*, No. 15-CV-275, 2016 WL 5394708, at *6 (N.D.N.Y. Sept. 36, 2016) ("Because a probationary employee is not entitled to the protection of the arbitration process under the plain terms of the [collective bargaining agreement], the [union] cannot have breached its duty of fair representation by failing to initiate that process on his behalf."); *Connor v. Elmhurst Dairy, Inc.*, No. 13-CV-4769, 2015 WL 5159185, at *7 (E.D.N.Y. Aug. 17, 2015) (finding that the plaintiff "was a probationary employee at the time he was terminated, and, therefore, [the employer] did not need to provide any reason for his termination").

### ii. Plaintiff's claim against UPS

Further, because Plaintiff fails to allege that Local 804 breached its duty of fair representation, a necessary element of a hybrid claim, the Court also grants UPS' motion for summary judgment.

An "employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee 'must not only show that [his] discharge was

---

by the union in its enforcement of a collective bargaining agreement is insufficient to state a claim); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 285 (E.D.N.Y. 2015) ("It is clear that 'the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.'" (quoting *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994))).

contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'" *Carrion*, 227 F.3d at 33 (quoting *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 165 (1983)); *see also Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016) ("An employee's claim against his employer for breach of a collective bargaining agreement can therefore proceed only if the employee's union violated its duty of fair representation." (citations and internal quotation marks omitted)); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) ("It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" (quoting *Vaca*, 386 U.S. at 186)).

Accordingly, Plaintiff does not have a viable duty of fair representation or a hybrid section 301/fair representation claim against Local 804 and UPS. The Court therefore grants Defendants' motions for summary judgment and dismisses these claims.

### d. Leave to amend

Plaintiff seeks leave to amend the TAC by adding a claim under section 7114(a)(1) of Title 5 of the United States Code, which addresses union representation in the federal workplace. (Proposed Fifth Am. Compl. 3.) In the proposed Fifth Amended Complaint, Plaintiff attaches what appears to be his own summary of his work history at UPS based on his pay stubs and exhibits attached to Local 804's motion to dismiss. (Plaintiff's Work History Chart, annexed to Proposed Fifth Am. Compl. as Ex. A, Docket Entry No. 58-1.) Plaintiff also attaches a pay stub as proof that he paid union dues. (Pay Stub, annexed to Proposed Fifth Am. Compl. as Ex. B, Docket Entry No. 58-1.)

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely

give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (same). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283.

Plaintiff's proposed Fifth Amended Complaint fails to state a plausible claim against Local 804 for breach of its duty of fair representation. Plaintiff's own summary of his work history is insufficient to rebut UPS' evidence that Plaintiff failed to work the requisite forty days in a seventy-day period to attain seniority status.

However, even assuming Plaintiff's calculation of the number of days worked is correct, Plaintiff does not provide any allegations to suggest that Local 804's calculation of the amount of dates worked was arbitrary or in bad faith. At most, Local 804 was negligent in its investigation as to whether Plaintiff had worked the requisite forty days, and a union's negligence is insufficient to plausibly allege a duty of fair representation claim. *See Felton v. Local Union 804, Int'l Brotherhood of Teamsters*, No. 17-CV-2309, 17-CV-4803, 2019 WL 1046952, at *4 (E.D.N.Y. Mar. 5, 2019) (dismissing the plaintiff's hybrid section 301 claim where the plaintiff alleged that the union failed to invoke certain articles of the collective

15

bargaining agreement because "[t]he [u]nion's decision . . . does not imply bad faith, but rather error or mere negligence").

Plaintiff also seeks leave to add a claim under section 7114(a)(1), alleging that Local 804 violated the duty of fair representation under this statute. However, section 7114(a)(1) "grants federal agency employees the right to organize" and does not apply to private employers and employees. *See National Federation of Federal Emps., Local 1309 v. Dep't of Interior*, 526 U.S. 86, 88 (1999); *Barker v. Int'l United Auto Workers*, No. 14-CV-12997, 2014 WL 6974718, at *1 (E.D. Mich. Dec. 9, 2014) (holding that section 7114(a)(1) "does not apply to private employers"). Indeed, section 7114(a)(1) falls under Title 5 of the United States Code, which is titled "Government Organization and Employees." *See* 5 U.S.C. § 7101 *et. seq.* Plaintiff, as a private employee, cannot bring a claim against Local 804 and a private employer under section 7114(a)(1). Accordingly, the Court finds that allowing Plaintiff to file the proposed Fifth Amended Complaint would be futile and therefore rejects the proposed Fifth Amended Complaint and denies Plaintiff's motion seeking leave to amend.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion to amend. The Clerk of Court is directed to enter judgment for Defendants and close this case.

Dated: August 5, 2019
      Brooklyn, New York

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge